457 So.2d 1232 (1984)
STATE of Louisiana
v.
James FLEMING.
No. 84 KA 0078.
Court of Appeal of Louisiana, First Circuit.
October 9, 1984.
Writ Denied December 14, 1984.
*1233 Ossie Brown, Dist. Atty. by Luke Lavergne, Asst. Dist. Atty., Baton Rouge, for plaintiff-appellee.
R. Judge Eames, Lewis O. Unglesby, Baton Rouge, for defendant-appellant.
Before EDWARDS, SHORTESS and SAVOIE, JJ.
SAVOIE, Judge.
James Fleming was charged by bill of information with possession of pentazocine with intent to distribute in violation of L.S. A.-R.S. 40:967 A. Defendant pled not guilty and waived trial by jury. The trial judge found defendant guilty of the lesser included offense of possession of pentazocine,[1] a violation of L.S.A.-R.S. 40:967 C and sentenced him to serve three years at hard labor. On appeal, defendant argues that the trial court erred in denying his *1234 motion to suppress physical evidence seized.[2] We have found no error in the trial court's denial of the motion to suppress and, accordingly, affirm.

ASSIGNMENT OF ERROR NO. 1
Defendant contends that the evidence seized resulted from an illegal search and is, therefore, inadmissible.
The fourth amendment of the United States Constitution and La. Const. art. 1, § 5 protect persons against unreasonable searches and seizures. However, the right of law enforcement officers to stop and interrogate one reasonably suspected of criminal conduct is recognized by La.C. Cr.P. art. 215.1, as well as by state and federal jurisprudence. State v. Andrishok, 434 So.2d 389 (La.1983); see also Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The right to make an investigatory stop and question the particular individual detained must be based upon reasonable cause to believe that he has been, is, or is about to be engaged in criminal conduct. State v. Andrishok, supra.
When a person is actually stopped without reasonable cause or when such stop is imminent, the right to "be left alone" is violated. Therefore, property abandoned or otherwise disposed of as a result of such a stop cannot be legally seized by the police. If, however, the property is abandoned without any prior unlawful intrusion into a person's right to be free from governmental interference, then such property may be lawfully seized. In such instances, there is no expectation of privacy and thus no violation of a person's custodial rights. See State v. Andrishok, supra.
The courts have looked objectively to the manner and circumstances in which a police officer approaches the person to determine whether the approach indicated that some form of detention was imminent. See State v. Wheeler, 416 So.2d 78 (La. 1982). As long as the person remains free to disregard the encounter and walk away, there has been no intrusion upon that person's liberty or privacy which would require some particularized and objective justification under the fourth amendment. State v. Belton, 441 So.2d 1195 (La.1983), cert. denied, ___ U.S. ___, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984).
Our inquiry, therefore, is two-fold: First, we must determine whether there was any unlawful intrusion into defendant's right to be left alone. If it is found that there was an unlawful intrusion, we must then determine whether defendant abandoned the property in question prior to such unlawful intrusion.
As to the first part of this test, we have held that reasonable cause for the investigatory detention is something less than probable cause and must be determined under the facts of each case by whether the officer had sufficient knowledge of facts and circumstances to justify an infringement on the individual's right to be free from governmental interference. The right to make an investigatory stop and question the particular individual detained must be based upon reasonable cause to believe he has been, is, or is about to be engaged in criminal conduct. The totality of the circumstances, "the whole picture," must be considered in determining whether reasonable cause exists. State v. Belton, supra. In this case, the fact that the location was a notorious one because it was consistently being used by individuals either dealing in or using drugs to the extent that citizens had complained to the police and the police had instituted a task force to attempt to control same, together with the fact that there was a congregation of individuals at this notorious location would be factors leading to a finding of reasonable cause. However, the mere presence of a group of citizens at a notorious corner is, of itself, insufficient to justify an investigatory stop. A complete *1235 examination of the record in the present case shows that there are no other factors present, and therefore we conclude that the stop was indeed unlawful.
We must then proceed to the next step in the inquiry; that is, whether the defendant abandoned the property prior to such unlawful intrusion. The circumstances surrounding the incident in question were adduced at the hearing on the motion to suppress and at the trial.[3] The record reflects that, as part of the above task force, the officers were patrolling the area where the instant offense occurred. This area was one of the notorious locations referred to above. According to Sgt. Pruett who testified at both proceedings, he was headed south on 36th Street in an unmarked police car when, as he neared the intersection of 36th and Cain Streets, he observed the defendant exit a car recently parked at the intersection. Sgt. Pruett speculated that defendant had not observed him, but rather was looking in a westerly direction and noticed another vehicle approaching eastward on Cain Street.[4] Immediately thereafter, Sgt. Pruett saw defendant "hook shot" an object which fell to the ground behind defendant's parked car. Sgt. Pruett exited his vehicle in order to retrieve the object. At the same time that Sgt. Pruett was retrieving the object, other police officers, travelling in the vehicle heading east on Cain Street, stopped and gathered defendant and some other men standing in the vicinity and began to pat them down. As these officers were in the process of patting down the men, Sgt. Pruett approached with the retrieved object. He advised the other police officers of the contents of the bag thrown down by defendant and because of the unlawful nature of the contents, requested that defendant be arrested.
It is apparent from the events surrounding this incident that the police officers did not approach the defendant in a manner or under circumstances which indicated that some form of detention was imminent until after defendant disposed of the contraband. Thus, the property was abandoned without any unlawful infringement of the defendant's rights and, therefore, lawfully seized.
Accordingly, the trial court correctly denied defendant's motion to suppress.
AFFIRMED.
EDWARDS, J., concurs and assigns reasons.
EDWARDS, Judge, concurring.
The proper inquiry is whether, prior to the abandonment of the evidence, there was an unlawful intrusion into defendant's constitutional right to be left alone. The legality of the stop which occurred after defendant abandoned the evidence is not at issue in determining whether the evidence must be suppressed.
An unlawful intrusion occurs when there is an actual stop without reasonable cause, or when a stop without reasonable cause is imminent. State v. Belton, 441 So.2d 1195, 1199 (La.1983). At the time defendant threw down the evidence, he had not actually been stopped. Hence the only issue is whether a stop was imminent.
Defendant had parked his car on 36th Street just past the intersection of Cain Street, and started walking across 36th toward a group of men, when someone in the group motioned in the direction of an unmarked police car approaching on Cain Street. Sergeant Pruett, in another unmarked police car traveling on 36th Street near the intersection, saw defendant throw down the evidence. The officers approaching on Cain Street stopped defendant, and Sergeant Pruett retrieved the abandoned evidence.
*1236 This situation does not even approach those in which courts have found that a stop was imminent. For example, a stop was imminent when the defendant in Belton dropped a bag containing drugs as police chased him. In State v. Chopin, 372 So.2d 1222 (La.1979), the police drove past defendant, turned around and came back toward him, turned on the bright lights, and stopped three to four feet in front of him. Defendant then ran and dropped a bag containing drugs. Although defendant was not actually stopped when he dropped the bag (because he was running from the officers), a stop was imminent.
In the instant case, there was no indication of an imminent stop. There was no chase, not even any show of authority by the officers until after defendant abandoned the evidence. Whether those officers intended eventually to stop him is immaterial; no detention was imminent at the time he abandoned the evidence. Accordingly the evidence was legally seized and therefore is admissible.
NOTES
[1] At the close of the state's evidence, defense counsel moved for a judgment of acquittal under La.C.Cr.P. art. 778. The trial court granted the motion as to the crime of possession of a controlled dangerous substance with the intent to distribute.
[2] Defendant appealed his conviction on the basis of three assignments of error. However he failed to brief Assignments of Error Nos. 2 and 3. As a result, these assignments are considered abandoned. Uniform Rules, Courts of Appeal, Rule 2-12.4.
[3] In determining whether a ruling on a motion to suppress was correct, we are not limited to the evidence adduced at the hearing on that motion. We may consider all pertinent evidence given at the trial of the case. State v. Chopin, 372 So.2d 1222, 1223 n. 2 (La.1979).
[4] This vehicle, approaching eastward on Cain Street, was an unmarked police car manned by two plain-clothes policemen who were also participating in the task force.