JAMES F. MCKAY III, CHIEF JUDGE
| iThe juvenile, R.M., seeks appellate review of his delinquency adjudication for possession of cocaine, a violation of La. R.S. 40:967C(2). For the reasons that follow, we affirm the adjudication. We affirm the disposition as amended, and remand the matter to the trial court with instructions.
FACTUAL AND PROCEDURAL BACKGROUND
An adjudication hearing was held on June 27, 2016. R.M.’s motion to suppress evidence was conducted within the context of the trial.
The State presented testimony from Elliott Gray, Larry Adams, and Mark Schmidt, NOPD detectives assigned to the narcotics unit in the 8th District and working a proactive plain clothes patrol. All three testified that on January 26, 2016, at approximately 12:15 a.m., they observed R.M. on Bourbon Street near the corner of St. Louis Street. Detective Gray explained that they knew R.M. to be a juvenile from previous stops for curfew violations.
The detectives approached R.M. and identified themselves. Det. Gray testified that R.M. was already acquainted with them. They informed R.M. that they would *219 be taking him to the curfew center. Det. Gray stated that they decided to take R.M. into custody because of his repeated curfew violations. R.M. | .¿cooperated and walked with the detectives a couple of blocks to the 8th District Station on Royal Street, where Det. Adam’s patrol car was parked. R.M. was not handcuffed during this time.
Before placing R.M. in the patrol car, Det. Schmidt conducted a full inventory search of R.M., which yielded a bag containing a white powered substance and ninety-one dollars in cash. Det. Schmidt stated that a field test of the substance revealed it to be cocaine.[1] R.M. was arrested for possession of narcotics.
All three detectives testified that NOPD standard procedure dictated that they search R.M. before putting him into the patrol car. Det. Adams stated that the search was also conducted for officer safety and to ensure that there was nothing that could be hidden in the vehicle. He further explained that R.M. would be searched when he arrived at the curfew center, so a search was inevitable.
At the close of testimony, the trial court denied R.M.’s motion to suppress evidence. The trial court also denied R.M.’s objection to the State’s introduction of the criminalist report, which demonstrated that the evidence seized resulted in a positive analysis for cocaine. R.M.’s objection was based on the fact that the State did not provide the required forty-five-day notice of their intent to use the report in lieu of live testimony.[2]
At the conclusion of the trial, R.M. was adjudicated delinquent for possession of cocaine, a violation of La. R.S. 40:9670(2). R.M. was placed on house arrest until the disposition hearing, which was set for July 18, 2016. The court record from July 18, 2016 reflects that within hours of the June 27, 2016 ^adjudication, R.M. ran away from his mother’s home, and a warrant was issued for his arrest.
A motion’s hearing was held on July 28, 2016. At that time, the court denied R.M.’s motion for release and noted that R.M. was presently detained at the Youth Study Center, where he would be held pending disposition.
A disposition was rendered on August 15, 2016, and amended on August 25, 2016 (to clarify that the petition contains only one charge, namely, La. R.S. 40:967(B)). R.M. was sentenced to the Department of Public Safety and Corrections for a period of six months. The sentence further states that R.M. would be placed in the custody of the Office of Juvenile Justice for the purpose of recommending a non-secure placement.
On appeal, R.M. asserts that the trial court erred in: 1) denying his motion to suppress evidence; and 2) permitting the State to introduce the Certificate of Analysis from the Criminalistics Laboratory. Additionally, R.M. has identified a patent error, ie., the trial court erred in failing to award him credit for time served in secure detention.
DISCUSSION
Assignment of Error No. 1: The trial court erred in denying the motion to suppress evidence.
The Fourth Amendment to the United States Constitution and Article I, Section 5 of the Louisiana Constitution protect persons against unreasonable searches and seizures. “A defendant adversely affected may move to suppress any evidence from use at the trial on the merits on the *220 ground that it was unconstitutionally obtained.” La. C.Cr.P. art. 703.
14“A trial court’s ruling on a motion to suppress the evidence is entitled' to great weight, because the court has the opportunity to observe the witnesses and weigh the credibility of their testimony.” State in the Interest of R.L., 11-1721, pp. 2-3 (La.App. 4 Cir. 5/30/12), 95 So.3d 1147, 1149 (citing State in the Interest of J.S., 08-1401, p. 4 (La.App. 4 Cir. 2/18/09), 6 So.3d 904, 907).
As this Court stated in State in Interest of T.H., 12-0223, p. 3 (La.App. 4 Cir. 12/12/12), 106 So.3d 703, 706,
“A trial judge’s decision to' deny a motion to suppress will be afforded great weight and will not be set aside unless to do so is clearly mandated by d preponderance of evidence.” State v. Adams, 99-2123, p. 4 (La.App. 4 Cir. 1/24/01), 779 So.2d 113, 117. Therefore, when a trial court denies a motion to suppress, factual and credibility determinations should not be reversed in the absence of a clear abuse of the trial court’s discretion, i.e., unless such ruling is not supported by “reliable evidence.” State v. Green, 94-0887, p. 11 (La. 5/22/95), 655 So.2d 272, 281. “[T]he district court’s findings of fact on a motion to suppress” are reviewed “under a clearly erroneous standard” and “the district court’s ultimate determination of Fourth Amendment reasonableness” is reviewed de novo. State v. Pham, 01-2199, p. 3 (La.App. 4 Cir. 1/22/03), 839 So.2d 214, 218. Accordingly, “[o]n mixed questions of law and fact, the appellate court reviews the underlying facts on ah abuse of discretion standard, but' reviews conclusions to be drawn from those facts de novo.” Id.
Here, R.M. argues that the detectives did not have the authority to search him at the time he was taken into custody. Specifically, R.M. argues that because the detectives had not observed him commit any criminal offense (other than a curfew violation), and because he was cooperative with the detectives, it was unreasonable to take him into custody. Thus, he submits that the search exceeded the scope of a search justified by La. C.Cr.P. art. 215.1 or Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) and did not constitute either a search incident to a lawful arrest or an inventory search.
lflIn denying the motion to suppress, the trial court issued written reasons for judgment, stating as follows:
In this Court’s view, the NOPD policy of searching the back of the police vehicle prior to placing a person inside for transport and the concomitant full inventory search of the person prior to being place in that vehicle is not an unreasonable procedure that offends the 4th Amendment.
The stop was a lawful stop for curfew of a youth known by name and age to the officers from previous contact. Nonetheless, the officers testified they again verified his age at the time of the stop. This makes the stop a lawful one for curfew violation. Having verified that the youth was out past curfew, his detention for transport to the curfew center [was] also lawful. He was not free to leave.
The policy to search the back of the police vehicle where the youth would be placed for transport serves to protect .the defendant from later allegations that contraband or a weapon was found in the back of the car after he exited it. The full search of the youth prior to being placed in the police unit serves to both protect officer safety while they make the transport and to account for his personal possessions. - ■
*221 The Court notes that the full inventory search could just as easily been conducted upon arrival at the curfew center. But that fact alone makes the point that the purpose of a search on entering the curfew center is to protect the center’s staff from a later allegation that staff stole a youth’s personal possession(s) and protects the youth from having items disappear for the reason that there was no inventory made on his arrival.
Given the purpose of the inventory search policy both for the NOPD in transporting youth and for the curfew center in admitting youth into the facility, the Court does not see a violation of the 4th Amendment where a youth has been lawfully arrested for curfew violation.
Thus, under either the initial inventory search or under the inevitable discovery rule, the Court denied the motion to suppress.
“It is well established that a search incident to a lawful custodial arrest is a limited exception to the constitutional prohibition of warrantless searches. State v. Sherman, 05-0779, p. 8 (La. 4/4/06); 931 So.2d 286, 292 (citing United States v. Robinson, 414 U.S. 218, 224, 94 S.Ct. 467, 471, 38 L.Ed.2d 427 (1973)).
|6As this Court stated in State v. Gayton, 13-1613, p. 9 (La.App. 4 Cir. 12/10/14), 156 So.3d 738, 746.
The U.S. Supreme Court has long held that the warrantless arrest of a suspect based on probable cause is reasonable under the Fourth Amendment. See Robinson, 414 U.S. at 235, 94 S.Ct. 467. Article 213 of the Louisiana Code of Criminal Procedure permits officers to execute warrantless arrests of persons when “[t]he person to be arrested has committed an offense in his presence....” See La. C.Cr.P. art. 213 A(1).8 See also Atwater v. City of Lago Vista, 532 U.S. 318, 354, 121 S.Ct. 1536, 149 L.Ed.2d 549 (2001) ( “If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender.”). (Emphasis added).
In their trial testimony, the detectives explained that they initially stopped R.M., a juvenile known to them from prior stops, for a curfew violation. It is clear that R.M. committed an offense, albeit a minor one, in the presence of the detectives.[3] Thus, they were authorized to arrest him. They further explained their reasons for searching R.M,, stating that NOPD policy required that they conduct a full inventory search prior to placing R.M. into the patrol car for transport to the curfew center. Additionally, it was stated that R.M. would be searched upon arrival at the curfew center. Thus, a search was inevitable.
Under the circumstances presented here, the search incident to the lawful arrest was proper. Accordingly, we find no error in the trial court’s denial of the motion to suppress the evidence.
Assignment of Error No. 2: The trial court erred in permitting the State to introduce the Certificate of Analysis from the Criminalistics Laboratory,
La. R.S. 15:501 provides:
A. The party seeking to introduce a certificate made in accordance with R.S. 15:499 shall, not less than forty-five days prior to the | commencement of the trial, give written notice of intent to offer proof by certificate. Such notice shall include a copy of the certificate.
*222 B. The attorney for the defendant, or the defendant acting in his own defense, if not represented by counsel, may demand that the person making the examination or analysis testify by filing a written demand and serving it upon the district attorney or attorney general seeking to introduce the certifícate. If such a demand is made timely as set forth below, the certificate shall not constitute prima facie proof of the facts thereon as set forth in R.S. 15:500.
C. Demand for the testimony of the person making the examination or analysis shall be filed and served by counsel for the defendant, or by a defendant acting as his own counsel, within thirty days of the receipt of the notice provided for in Subsection A of this Section. The trial court may extend this thirty-day period for good cause shown if such request is made prior to the expiration of the thirty days.
D. If no request for additional time is made prior to the expiration of the thirty-day period, an extension of time in which to make such a demand may be made only upon a showing of exceptional circumstances. Any allegation that such circumstances exist shall constitute a preliminary plea on the defendant’s behalf for the pui-poses of Louisiana Code of Criminal Procedure Article 580. The demand shall be made in writing and notice shall be served on the district attorney or the attorney general prosecuting the matter. The court shall conduct a contradictory hearing to determine if the extension is warranted.
E. The filing of a demand by the defendant does not prevent the admission of the certificate or its contents in any other manner otherwise appropriate pursuant to the Louisiana Code of Evidence or its ancillaries.
The record reflects that on June 8, 2016, the State filed its notice of intent to offer the criminalist report along with an attached copy of the report. At that time, the trial was set for June 18, 2016. By joint motion, the trial was continued to June 27, 2016. At no time prior to trial did R.M. file a written demand that the person making the criminalist report testify at trial.
After all the trial testimony was taken, and the State attempted to introduce the report into evidence, R.M. objected, asserting that the State failed to comply with the forty-five-day notice requirement set forth in La. R.S. 15:501.
IsThe trial court admitted the criminalist report into evidence over R.M.’s objection. In overruling R.M.’s objection, the court noted that thirty-eight days elapsed between the answer hearing on May 17, 21016, and the June 27, 2016 agreed upon trial date. Thus, it was impossible for the State to comply with the forty-five-day requirement of La. R.S. 15:501.
In written reasons for judgment, the trial court further explained:
It is significant to this Court that the statutory filing deadline requirements were an impossibility for either the State or the Defendant to comply with. Thus, the issue shifts to whether the parties tried to comply with the spirit of the statute — and actually not simply the spirit of the law, but the entire purpose of the law — which is to give the Defendant notice of the State’s intent to use the criminalist report and to give notice to the State that the Defendant objects and demands live testimony.
As noted, the State filed actual notice and the criminalist report on June 6. Defendant had actual [notice] as of that date. However, Defendant did not file an objection to the untimely filing of the 15:499 notice, nor did Defendant file an *223 objection to the use of the criminalist report and demand live testimony.
In this Court’s view, given the fact that (1) the trial date was set in a shorter period of time than the 15:501 filing deadlines and (2) it was impossible for either the State of the Defendant to comply with the statutory filing deadlines, the issue here is the parties compliance with the substance of the statute, which is notice.
⅜⅜⅜⅜
The Court further notes that the mandatory trial settling deadlines provided by Ch.C. Art. 877[4] and the statutory deadlines in La. R.S. 15:501 operate in conflict with one another in most drug cases heard in juvenile court on a routine basis. The only way for a court to avoid the conflict would be to set a trial date that is at least 45-days after the answer hearing, with the consequence that the State would have to file its 15:499 notice at the Answer Hearing (assuming the evidence had been tested and the report prepared). The further consequence of setting the trial date at least 45 days out, would be to leave a balance of only 45 days within which to conduct the trial before the expiration 1 aof the mandatory 90-day trial period. In this Court’s view, the underlying factual circumstances in the case at bar happen on a recurring basis, and by operation of the conflicting statutes, will continue to occur, barring legislative action to amend the deadlines of one or the other statutes, (footnote added).
Clearly, neither side complied with the time requirements of La. R.S. 15:501. However, as the trial court thoroughly explained, the deadlines set forth in La. Ch.C. art. 877 and La. R.S. 15:501 are in conflict in juvenile court drug cases, essentially rendering it impossible for either party to meet the deadlines. Under the circumstances, we find no abuse of discretion in the trial court’s determination that the State substantially complied with the statutory deadlines. Accordingly, the trial court did not err in allowing the introduction of the criminalist report.
Errors Patent: The trial court erred in failing to award R.M. credit for time served in secure detention.
R.M. submits that he was incarcerated for a substantial length of time in the Youth Study Center following his adjudication, and should have been awarded credit for the time served. Although the record before us does not indicate the length of the incarceration, we agree that R.M. is entitled to credit for time served in secure detention.
La. Ch.C. art. 898(A) provides that with a felony grade disposition, as in the present case, “[t]he court shall give a child credit for time spent in secure detention prior to the imposition of disposition.” R.M.’s disposition does not include credit for time served. Thus, we amend the disposition to give R.M. credit for time spent in a secure detention facility before the imposition of disposition, if any, and remand this matter with instructions to the juvenile court to note the amendment in the written disposition and in the minute entry.
^CONCLUSION
For the foregoing reasons, we find no error in the trial court’s denial of the motion to suppress evidence and in the trial court’s admission of the crime lab certificate over R.M.’s objection. Thus, the adjudication of R.M. as delinquent on the *224 charge of possession of cocaine, a violation of La. R.S. 40:967 C(2), must be affirmed. Finding a patent error, we amend the disposition to reflect credit for time spent in secure detention prior to disposition, and affirm the disposition as amended. We remand this matter with instructions to the juvenile court to note the amendment in the written disposition and in the minute entry.
ADJUDICATION AFFIRMED; DISPOSITION AFFIRMED AS AMENDED; REMANDED WITH INSTRUCTIONS.

. Det. Schmidt identified the bag containing the white power in court.

. See La. R.S. 15:501.

. See Municipal Code § 54-8.

. In this case, La. Ch.C. art. 877(B) provides that "[i]f the child is not continued in custody, the adjudication hearing shall commence within ninety days of the appearance to answer the petition.”